**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LONG BEACH SECURITIES CORP., 3415 Vision Drive Columbus, OH 43219,<br><br>                    *Plaintiff*,<br>          v.<br><br>NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, 1775 Duke Street, Alexandria, VA 22314,<br><br>                    *Defendant*. | Civil Action No. 1:17-cv-1333 |

**<u>COMPLAINT</u>**

Plaintiff Long Beach Securities Corp. ("LBSC"), by its undersigned counsel, for its Complaint against defendant National Credit Union Administration Board ("NCUA Board"), as Liquidating Agent of Southwest Corporate Federal Credit Union ("Southwest") and Members United Corporate Federal Credit Union ("Members United" and together with Southwest, the "Credit Unions"), alleges on knowledge as to itself and its conduct and upon information and belief as to all other matters as follows:

## OVERVIEW OF ACTION

1.      This is a straightforward action against the NCUA Board for its breach of an agreement it entered into with JPMorgan Chase & Co. ("JPMorgan") on November 19, 2013, to settle various lawsuits the NCUA Board had brought against LBSC and various other entities owned, directly or indirectly, by JPMorgan relating to the purchase of residential mortgage–backed securities ("RMBS") by the Credit Unions, for the payment of more than $1.4 billion (the "Settlement Agreement").  A true and correct copy of the Settlement Agreement between JPMorgan and the NCUA Board is attached hereto as Exhibit A.

2.      Because at the time it entered into the Settlement Agreement with JPMorgan the NCUA Board was continuing to pursue claims against third parties based on some of the same RMBS that were covered by the Settlement Agreement, the NCUA Board agreed in the Settlement Agreement to provisions to protect JPMorgan from further liability arising out of the NCUA Board's pursuit of claims against those third parties.  Specifically the NCUA Board agreed that (i) if it were to obtain a judgment against a third party relating to any of the RMBS covered by the Settlement Agreement, it would "reduce the judgment or award" in an amount sufficient to hold JPMorgan harmless from any claim over that the third party may assert against any JPMorgan entity such as LBSC; and (ii) if it were to settle its claims against a third party, it would "use [its] good faith and best efforts" to secure a release for the relevant JPMorgan entity,

such as LBSC, from any claim over that the third party may have against that JPMorgan entity

for the payment being made to the NCUA Board.  This latter provision, obviously, contemplated

that the NCUA Board might have to accept a lesser amount from the third party in order to

obtain the release it undertook to use its "best efforts" to obtain.

3.      At the time it entered into the Settlement Agreement with JPMorgan, the NCUA

Board was pursuing a separate action against Credit Suisse Securities (USA) LLC ("CS USA")

and Credit Suisse First Boston Mortgage Securities Corp. ("CS First Boston") (the "Credit Suisse

Action"), alleging claims based on, among other things, the Credit Unions' investments in two

RMBS transactions—the Long Beach Mortgage Loan Trust 2006-1 transaction ("LBMLT 2006-

1 Transaction") and the Long Beach Mortgage Loan Trust 2006-6 transaction ("LBMLT 2006-6

Transaction" and together with the LBMLT 2006-1 Transaction, the "Transactions")—that were

covered by the Settlement Agreement.  CS USA had acted as an underwriter of the two

Transactions.

4.      As detailed more fully below, the NCUA Board ultimately resolved its claims

against CS USA by accepting an offer of judgment from CS USA and CS First Boston, which

resulted in the Court entering a stipulated judgment in favor of the NCUA Board in April 2016

(the "Stipulated Judgment").  As part of its acceptance of the offer of judgment, the NCUA

Board and CS USA negotiated with one another concerning the amount of pre-judgment interest

to be paid by CS USA to the NCUA Board, as well as an additional amount in attorneys' fees

and costs that CS USA would, and ultimately did, pay to the NCUA Board.  Based on its

payment to NCUA Board, CS USA then asserted an indemnity claim against LBSC in the

amount of $19.62 million under the terms of indemnity provisions contained in the underwriting

agreements between LBSC and CS USA for the two Transactions—an underwriting agreement

dated January 24, 2006 ("LBMLT 2006-1 Underwriting Agreement") and an underwriting

agreement dated July 21, 2006 ("LBMLT 2006-6 Underwriting Agreement").

5.      In response to CS USA's indemnification demand, JPMorgan requested that the

NCUA Board take steps to hold LBSC harmless, as required by the Settlement Agreement.  The

NCUA Board wrongly refused to do so.

6.      LBSC and CS USA thereafter engaged in a mediation, which resulted in a

settlement of CS USA's indemnification claim for $10 million.   LBSC invited the NCUA Board

to participate in the mediation, but the NCUA Board declined to do so.

7.      LBSC demanded that the NCUA Board reimburse it for that $10 million payment,

which LBSC made on April 24, 2017, but the NCUA Board refused to do so.  This action seeks

to recover that $10 million payment plus the fees and expenses that LBSC incurred in defending

against and resolving CS USA's claim.

## THE PARTIES

8.      Plaintiff LBSC is the depositor in the LBMLT 2006-1 Transaction and the

LBMLT 2006-6 Transaction.  LBSC is a party to the LBMLT 2006-1 Underwriting Agreement

and the LBMLT 2006-6 Underwriting Agreement, both of which were entered into by and

between it and CS USA.  LBSC is a Delaware corporation with its principal place of business in

Ohio.  LBSC is a subsidiary of non-party JPMorgan Chase Bank, N.A., which, in turn, is a

wholly-owned bank subsidiary of non-party JPMorgan.

9.      The NCUA Board manages the National Credit Union Administration, which is

an independent government agency that charters and regulates federal credit unions.  Non-party

Southwest was a federally-chartered corporate credit union with its offices and principal place of

business in Plano, Texas.  Non-party Members United was a federally-chartered corporate credit

union with its offices and principal place of business in Warrenville, Illinois.  The NCUA Board

is the Liquidating Agent for both Southwest and Members United.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 12 U.S.C. § 1789(a)(2),

which provides that "[a]ll suits of a civil nature at common law or in equity to which the

[NCUA] Board shall be a party shall be deemed to arise under the laws of the United States, and

the United States district courts shall have original jurisdiction thereof, without regard to the

amount in controversy."

11.     This Court also has subject matter jurisdiction pursuant to 12 U.S.C. § 1787(b)(6),

which provides that within 60 days after the NCUA Board disallows a claim against a credit

union for which it is liquidating agent, "the claimant may . . . file suit on such claim . . . [in] the

United States District Court for the District of Columbia (and such court shall have jurisdiction

to hear such claim)."

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because each

defendant is a resident of and/or conducts business in this District.  This Court has personal

jurisdiction over each defendant because they are residents of and/or conduct business in this

District.

13.     Venue is also proper in this District because Section 15 of the Settlement

Agreement provides that "[e]ach of the Settling Parties [*i.e.*, JPMorgan, including Plaintiff

LBSC, as well as the NCUA Board as Liquidating Agent for the Credit Unions] submits to the

personal jurisdiction of the United States District Court for the District of Columbia for purposes

of implementing and enforcing the settlement embodied in this Agreement."

14.     Plaintiff has complied with any and all requirements to exhaust its administrative

remedies.  Without conceding it had any obligation to do so, on November 23, 2016, LBSC

-5-

timely submitted an administrative proof of claim to the NCUA Board.  It supplemented that

proof of claim to provide the NCUA Board with the details of LBSC's settlement with CS USA

following the mediation in which the NCUA Board had elected not to participate.  On June 5,

2017, the NCUA Board denied LBSC's proof of claim.  The NCUA Board's denial of LBSC's

claim is entitled to no weight in this action.

## FACTUAL BACKGROUND

### The NCUA Board's Litigation and Subsequent Settlement With Plaintiff

15.     On or about June 20, 2011, December 14, 2012, January 4, 2013, and September

23, 2013, the NCUA Board as the Liquidating Agent for the Credit Unions and certain other

credit unions filed actions against various JPMorgan entities alleging securities violations arising

out of the sale of certain RMBS to the credit unions.  Plaintiff LBSC was a defendant in one of

those four actions, *National Credit Union Administration Board* v. *JPMorgan Chase Bank, N.A.*

*(as Successor-in-Interest to Washington Mutual Bank, WaMu Capital Corp., Long Beach*

*Securities Corp., and WaMu Asset Acceptance Corp.) et al.*, No. 13-cv-2012, filed in the United

States District Court for the District of Kansas.

16.     On November 19, 2013, the NCUA Board and JPMorgan entered into the

Settlement Agreement, which resolved all of the claims the NCUA Board had brought as

Liquidating Agent of the Credit Unions and other credit unions in all of the actions.  Under the

terms of the Settlement Agreement, JPMorgan paid the NCUA Board $1,417,525,773.20 (the

"Settlement Consideration") in return for broad releases.  The releases in the Settlement

Agreement released claims against, among others, all of the defendants in the actions, including

LBSC, relating to all RMBS issued, sponsored or sold by those defendants and their affiliates,

including the LBMLT 2006-1 Transaction and the LBMLT 2006-6 Transaction.

17.     The Settlement Agreement did not preclude the NCUA Board from pursuing claims against parties not affiliated with JPMorgan who might also have had a role in the RMBS transactions covered by the releases in the Settlement Agreement.  However, Section 8 of the Settlement Agreement contains specific provisions that provide protection to JPMorgan from incurring any liability to those third parties in the event the NCUA Board were to pursue such claims, including where, as later occurred with CS USA, the NCUA Board obtains a judgment or otherwise settles with a third party for claims concerning RMBS covered by the Settlement Agreement.

18.     Section 8(a) of the Settlement Agreement provides that (emphasis added):

> In the event any Liquidating Agent obtains a judgment against any other party or parties relating to the Securities identified in Exhibit A or Exhibit B (a "Third Party Judgment"), and such other party or parties, in turn, successfully assert(s) a claim against any of the Released Defendant Persons relating to the Securities on the basis of contribution, indemnity or any other similar legal theory or claim (a "Claim Over"), *the Liquidating Agents agree they will reduce the judgment or award they obtain or have obtained* against the party asserting the Claim Over in a percentage calculated using the pro tanto rule, the proportionate rule or the pro rata rule, or such other rules as may apply in the relevant jurisdiction, *whichever percentage is sufficient to cover fully or otherwise hold the Released Defendant Persons harmless in all respects from the other party's or parties' Claim Over against the Released Defendant Persons.* The Liquidating Agents agree, with respect to a proceeding in which one or more of the Liquidating Agents is a party, that they shall consent to and join in, and with respect to all other proceedings consent to, any motion by the Released Defendant Persons seeking a determination that this Agreement constitutes a release or settlement in good faith of any Claim Over in any such litigation.

19.     In other words, pursuant to Section 8(a) of the Settlement Agreement, the NCUA Board is obligated to offset any judgment or award it obtains or has obtained against a third party in order to "cover fully or otherwise hold [LBSC] harmless in all respects" from any contribution or indemnity claims that the third party, such as CS USA, is able successfully to assert against LBSC based upon RMBS transactions covered by the Settlement Agreement.

-7-

20.     Section 8(b) of the Settlement Agreement provides that (emphasis added):

> The Liquidating Agents further agree that, to the extent any of them settle, on or after the date of this Agreement, any claims they may have against any other party relating to the Securities and on which the Liquidating Agents provide a release to such other parties (a "Third Party Settlement"), *the Liquidating Agents will use their good faith and best efforts to include in the Third Party Settlement a release from such other party in favor of the Released Defendant Persons* (in a form equivalent to the releases contained herein) of any claims relating to the Securities on the basis of contribution, indemnity or any similar legal theory or claim under which the Released Defendant Persons would be liable to pay any part of such Third Party Settlement, provided however that in no event shall the Liquidating Agents be required to decline a settlement they otherwise deem acceptable because such third party refuses to release the Released Defendant Persons.

21.     In other words, pursuant to Section 8(b) of the Settlement Agreement, the NCUA Board is obligated, in negotiating a settlement with CS USA or any other third party, to "use [its] good faith and best efforts" to obtain a release of JPMorgan (including LBSC) from contribution or indemnity claims that the third party might have as a provision of the NCUA Board's settlement with that third party.

22.     Plaintiff has fulfilled its obligations under the Settlement Agreement, including by paying the NCUA Board the Settlement Consideration.

### The LBMLT 2006-1 and LBMLT 2006-6 Underwriting Agreements

23.     In connection with LBMLT 2006-1 Transaction, CS USA (as underwriter) and LBSC (as depositor) entered into the LBMLT 2006-1 Underwriting Agreement.

24.     In Section 8(a)(i)-(iii) of the LBMLT 2006-1 Underwriting Agreement, in relevant part, LBSC  agreed to indemnify and hold harmless CS USA against various matters arising out of the LBMLT 2006-1 Transaction, including liability for alleged misstatements as to matters other than information relating to the underwriters.

25.     In connection with the LBMLT 2006-6 Transaction, CS USA (as underwriter) and LBSC (as depositor) entered into the LBMLT 2006-6 Underwriting Agreement.

26.     In Section 8(a)(i)-(iii) of the LBMLT 2006-6 Underwriting Agreement, in relevant part, LBSC agreed to indemnify and hold harmless CS USA against various matters arising out of the LBMLT 2006-6 Transaction, including liability for alleged misstatements as to matters other than information relating to the underwriters.

### The Credit Suisse Action and the Offer of Judgment

27.     On or about September 23, 2013, the NCUA Board as Liquidating Agent for the Credit Unions filed the Credit Suisse Action in the United States District Court for the Southern District of New York.  In its complaint in the Credit Suisse Action, the NCUA Board alleged securities violations arising out of CS USA's and CS First Boston's roles in the sale of certain RMBS.  The NCUA Board's claims included claims based upon the purchase of $40 million face amount of RMBS in the LBMLT 2006-1 Transaction by Southwest ($10 million) and Members United ($30 million), and the purchase of $10 million face amount of RMBS by Southwest in the LBMLT 2006-6 Transaction.

28.     The NCUA Board's claims in the Credit Suisse Action relating to the Transactions are based upon alleged misstatements concerning the standards applied in originating the mortgage loans in the LBMLT 2006-1 Trust and the LBMLT 2006-6 Trust. (Credit Suisse Action Complaint, ¶¶ 193 *et. seq.*)   As such, the claims asserted by the NCUA Board against CS USA relating to the Transactions fall within the scope of the indemnification provisions of the LBMLT 2006-1 and LBMLT 2006-6 Underwriting Agreements.

29.     On or about March 11, 2016, CS USA and CS First Boston made an offer of judgment to the NCUA Board to resolve the claims asserted in the Credit Suisse Action on terms that involved paying the NCUA Board the full amount of damages it was claiming in the Credit

Suisse Action, while otherwise limiting the judgment to one that would have no precedential or *res judicata* effect and treating it as though it were a settlement of disputed matters.

30.     In connection with the offer of judgment, CS USA and CS First Boston had negotiations with the NCUA Board over various matters, including the amount of interest that the NCUA Board should recover, and the amount of attorneys' fees that CS USA and CS First Boston would pay.

31.     Ultimately the NCUA Board accepted an offer of judgment from CS USA and CS First Boston and, on or about April 22, 2016, the Court entered the Stipulated Judgment against CS USA and CS First Boston for damages in the amount of $50,312,048 (inclusive of pre-judgment interest) and further ordered the parties to meet and confer regarding the amount of attorneys' fees and costs to be paid by CS USA and CS First Boston.  CS USA, CS First Boston and the NCUA Board subsequently agreed on the amount of attorneys' fees and costs to be paid to (and that were paid to) the NCUA Board.

32.     During the negotiations it had with CS USA and CS First Boston, the NCUA Board did not "use [its] good faith and best efforts" to secure a release from contribution or indemnity for LBSC or any other JPMorgan entity from CS USA.  Indeed, the NCUA Board made no effort to obtain such a release.

33.     The NCUA Board did not reduce or otherwise offset the Stipulated Judgment by any amount to account for CS USA's alleged indemnification rights against LBSC.

### CS USA's Indemnity Claim Against LBSC

34.     After the Court entered the Stipulated Judgment, CS USA demanded indemnity from LBSC pursuant to the LBMLT 2006-1 Underwriting Agreement and the LBMLT 2006-6 Underwriting Agreement in the approximate amount of $19.62 million, which is the portion of

the damages, attorneys' fees and interest paid to the NCUA Board pursuant to the Stipulated

Judgment that CS USA claims is attributable to the Transactions.

35.     Following CS USA's indemnification demand, LBSC demanded that the NCUA

Board reduce the Stipulated Judgment it obtained against CS USA and/or otherwise take steps to

protect LBSC from CS USA's indemnification claim.  The NCUA Board steadfastly refused to

do so.

36.     After preliminary correspondence between LBSC and the NCUA Board, the

NCUA Board informed LBSC that it should file an administrative proof of claim with the NCUA

Board in accordance with the administrative claims procedure set forth in 12 U.S.C.

§ 1787(b)(3)–(5) and 12 C.F.R. § 709.6(a)(1).  Although LBSC did not believe that its claim

against the NCUA Board was subject to this administrative claim procedure given that Section

15 of the Settlement Agreement expressly provides that disputes relating to the enforcement of

the Settlement Agreement would be subject to adjudication in the United States District Court for

the District of Columbia, LBSC nonetheless submitted an administrative proof of claim to the

NCUA Board on November 23, 2016.  The proof of claim demanded that the NCUA Board

comply with its obligations under the Settlement Agreement or, in the alternative, disgorge the

amounts by which it had been unjustly enriched through CS USA's payment of the Stipulated

Judgment.  Specifically, LBSC demanded that the NCUA Board (1) reduce the Stipulated

Judgment in an amount sufficient to hold LBSC harmless; (2) defend LBSC from CS USA's

indemnity claim; (3) reimburse LBSC for any liability it ultimately incurred to CS USA, whether

through settlement or adjudication, together with interest; and (4) reimburse LBSC for its

attorneys' fees, costs and expenses in connection with CS USA's indemnity claim.  While

LBSC's administrative claim was pending against the NCUA Board, CS USA continued to

threaten litigation against LBSC in order to seek recovery on its claim for indemnification.

-11-

37.     After preliminary discussions, LBSC and CS USA determined that it would be in
their mutual interest to submit CS USA's claim for indemnity to non-binding mediation and, in
the event the mediation was unsuccessful, arbitration.  Because the NCUA Board  (a)  initiated
the Credit Suisse Action—which led to CS USA's assertion of its claim for indemnity against
LBSC—and (b) would ultimately be liable pursuant to the Settlement Agreement for any
amounts LBSC paid to CS USA to resolve the indemnity claims asserted against it, LBSC
drafted the mediation/arbitration agreement between LBSC and CS USA to allow the NCUA
Board to participate in the mediation discussions and/or arbitration should it choose to do so.
After LBSC and CS USA executed the agreement to mediate and if necessary arbitrate the
indemnification dispute on December 12, 2016, LBSC wrote a letter to the NCUA Board that
same day, in which LBSC enclosed a copy of the mediation/arbitration agreement between
LBSC and CS USA and invited the NCUA Board to attend and participate in the mediation,
which was scheduled to take place on January 10, 2017.

38.     The NCUA Board did not respond to LBSC's invitation until more than two
months had passed, after the mediation between LBSC and CS USA had already taken place.  In
its February 15, 2017 letter, the NCUA Board stated that it would not participate in any future
mediation or arbitration proceedings between LBSC and CS USA.  In its letter, the NCUA Board
suggested that LBSC had an obligation to incur the costs of defending CS USA's claim for
indemnity in a judicial proceeding through conclusion and risk being held liable for the full
amount of CS USA's claim rather than submitting the claim to mediation, noting that the
LBMLT 2006-1 and LBMLT 2006-6 Underwriting Agreements provided for the right to have all
disputes relating to the agreements decided by a judicial tribunal.

39.     LBSC and CS USA were not able to reach any resolution at the January 10, 2017
mediation session itself.  Following the mediation, LBSC and CS USA continued to participate

in follow-up discussions with the mediator.  Eventually, CS USA and LBSC agreed to settle CS

USA's $19.62 million claim for $10 million.  On April 13, 2017 LBSC and CS USA entered into

an agreement providing for a full release of CS USA's claims against LBSC relating to the

LBMLT 2006-1 and LBMLT 2006-6 Transactions, in exchange for a $10 million payment (the

"Credit Suisse Release").  On April 24, 2017, LBSC paid CS USA the $10 million provided for

in the Credit Suisse Release.

### The NCUA Board's Ongoing Refusal to Honor the Settlement Agreement

40.     On June 5, 2017, the NCUA Board denied LBSC's administrative proof of claim.

Although that denial is not entitled to any weight or consideration in this action, it is worth

noting that the NCUA Board's articulated reasoning asserts positions that are internally

inconsistent and that do not comport with arguments the NCUA Board made to LBSC in prior

correspondence.  For example, the NCUA Board has advanced inconsistent positions as to

whether the process leading to the Stipulated Judgment entered against CS USA that resulted in

the payment to the NCUA Board (of which CS USA alleges that $19.62 million is attributable to

the Transactions) is a judgment to which Section 8(a) of the Settlement Agreement applies, or is

a settlement to which Section 8(b) of the Settlement Agreement applies.  Thus, the NCUA Board

has suggested that the payment it received pursuant to the Stipulated Judgment was not a

"'judgment' within the meaning of Section 8" of the Settlement Agreement, while at the same

time it has made clear it made no effort to obtain a release from CS USA for LBSC if, rather than

a judgment, the offer of judgment process is more properly characterized as a settlement subject

to Section 8(b) of the Settlement Agreement.

41.     Because LBSC has been required to make a payment to CS USA in response to

the claim for indemnification asserted against LBSC, and because LBSC has been required to

incur attorneys' fees and other expenses and costs in connection with its defense against CS

USA's indemnification claim, LBSC has suffered actual harm.

## CAUSES OF ACTION

### COUNT ONE
### (Against Defendant NCUA Board)
### (Breach of Contract)

42.     Plaintiff repeats, re-alleges and incorporates by reference each and every

allegation in the preceding paragraphs as if fully set forth herein.

43.     Plaintiff has fully performed all of its obligations under the Settlement

Agreement, including by paying the NCUA Board the Settlement Consideration.

44.     The NCUA Board has breached the Settlement Agreement by failing to use its

"good faith and best efforts" to obtain for LBSC a release from CS USA of claims on the basis of

contribution, indemnification or any similar legal theories relating to amounts paid to the NCUA

Board pursuant to the Stipulated Judgment in the Credit Suisse Action.

45.     Alternatively, the NCUA Board has breached the Settlement Agreement by

refusing to reduce the Stipulated Judgment it obtained in the Credit Suisse Action in an amount

sufficient to hold LBSC harmless against CS USA's claim for indemnification.

46.     As a result of the NCUA Board's breach of the Settlement Agreement, LBSC was

required to make a payment to CS USA to resolve CS USA's claim for indemnification, and to

expend attorneys' fees and other costs and expenses in defending against CS USA's claim.

LBSC has thus been damaged in an amount to be determined at trial.

### COUNT TWO
### (Against Defendant NCUA Board)
### (Unjust Enrichment)

47.     Plaintiff repeats, re-alleges and incorporates by reference each and every

allegation in the preceding paragraphs as if fully set forth herein.

48.     In order to receive the Settlement Consideration of more than $1.4 billion, the NCUA Board agreed that it would protect LBSC and the other defendants on whose behalf the Settlement Consideration was paid ("Released Defendant Persons") from indemnification and contribution claims by third parties the NCUA Board was continuing to pursue on behalf of the Credit Unions on the same RMBS transactions.  The essence of the bargain was that the NCUA Board could continue to pursue third parties on deals that were the subject of the Settlement Agreement to recover based on the culpability of those third parties, but the NCUA Board would not be entitled to recover from third parties amounts that the third parties could turn around and recover from LBSC and the other Released Defendant Persons, who would be fully protected by the NCUA Board from claims over by those third parties.  Enticed by its receipt of more than $1.4 billion, the NCUA Board agreed to this arrangement, notwithstanding the fact that it might require the NCUA Board to reduce a judgment or accept less in settlement from those third parties on claims it continued to pursue.

49.     Notwithstanding that promise, the NCUA Board recovered an amount from CS USA on RMBS claims covered by the Settlement Agreement that CS USA alleged was subject to an indemnification obligation on the part of LBSC.

50.     The NCUA Board has retained this amount and has refused to reduce the Stipulated Judgment in the Credit Suisse Action or return that amount or any of the amount it recovered from CS USA notwithstanding any indemnification rights that CS USA had against LBSC.

51.     As a result of the foregoing, the NCUA Board has been unjustly enriched in an amount to be determined at trial.

52.     Under the circumstances, it would be against equity to permit the NCUA Board to retain this double recovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against the NCUA Board as follows:

(a)     on the First Cause of Action, awarding Plaintiff damages for the NCUA Board's breach of the Settlement Agreement, as described above;

(b)     on the Second Cause of Action, requiring the NCUA Board to disgorge to Plaintiff the amount by which it has been unjustly enriched;

(c)     awarding Plaintiff its costs and attorneys' fees in submitting its proof of claim in accordance with the NCUA Board's administrative claim procedures; and

(d)     granting Plaintiff such other and further relief, including costs and attorneys' fees, as this Court may deem just and proper.


Dated:  July 6, 2017                                    Respectfully submitted,

                                                        Robert A. Sacks (Bar No. MI0069)
                                                        SULLIVAN & CROMWELL LLP
                                                        1888 Century Park East, Suite 2100
                                                        Los Angeles, CA 90067
                                                        (310) 712-6600
                                                        sacksr@sullcrom.com

                                                        Amanda Flug Davidoff (Bar No. 978033)
                                                        SULLIVAN & CROMWELL LLP
                                                        1700 New York Avenue, N.W., Suite 700
                                                        Washington, D.C. 20006-7500
                                                        (202) 956-7500
                                                        davidoffa@sullcrom.com

                                                        *Attorneys for Plaintiff Long Beach
                                                        Securities Corp.*